<table>
<tr><td colspan="2"><b>DISTRICT COURT OF THE VIRGIN ISLANDS</b><br><br><b>DIVISION OF ST. CROIX</b></td></tr>
</table>

**DARIN ROSS and FIONA ROSS,**

        **Plaintiffs,**

    **v.**

**AARP, INC., AARP SERVICES, INC., GRUPO COOPERATIVO SEGUROS MULTIPLES, COOPERATIVA DE SEGUROS MULTIPLES DE PUERTO RICO, SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., OVERSEAS INSURANCE AGENCY, INC., VERICLAIM, INC., and BYRON GILCHREST,**

        **Defendants.**

**1:19-cv-00057-MEM-EAH**

TO:    **Pamela L. Colon, Esq.**
        *For Plaintiffs*
        **Karen Ellis Carr, Esq.**
        **Eric Roman, Esq.**
        **Mattie Bowden, Esq.**
        **Andrew C. Simpson, Esq.**
        *For AARP, Inc. and AARP Services, Inc.*
        **Ann Cecile O'Neill, Esq.**
        **Eugenio W.A. Geigel-Simounet, Esq.**
        *For GCSM and CSMPR*
        **Richard H. Hunter, Esq.**
        **Joshua D. Lerner, Esq.**
        **Peter Tepley, Esq.**
        **Victor G. Sanabria, Esq.**
        *For Vericlaim, Sedgwick, and Gilchrest*

## MEMORANDUM OPINION

**THIS MATTER** comes before the Court on the Motion for Protective Order filed by Defendants AARP Services, Inc., and AARP, Inc. (the "AARP Defendants"). Dkt. No. 210. For

*Ross v. AARP Services, Inc.*
1:19-cv-00057-MEM-EAH
Memorandum Opinion
Page 2

the reasons that follow the Court will **GRANT** the motion and enter the AARP Defendants'

proposed protective order with the Court's modification.

## BACKGROUND

### I.     Plaintiffs' Allegations[1]

The Complaint in this case was originally filed in Superior Court in September 2019.

Dkt. No. 1-1. Plaintiffs Darin and Fiona Ross alleged that they purchased a homeowner's

insurance policy in July 2017 for a home on St. Croix. *Id*. ¶ 17. The policy was effective July

18, 2017 through July 18, 2018, providing coverage with limits of $353,000 for windstorm

damage to the dwelling, $45,000 for other structures, $15,000 for personal property, and

$15,000 for loss of use. *Id*. ¶¶ 18, 20. Based on the advertising and branding of the insurance

policy, Plaintiffs believed that the insurance was provided through the AARP Defendants; in

fact, the insurance was through Real Legacy Assurance ("Real Legacy"), a wholly owned

subsidiary of Cooperativa de Seguros Multiples of Puerto Rico ("CSMPR"), and member

company of Grupo Cooperativo Seguros Multiples ("GCSM"). *Id*. ¶¶ 6, 7, 21-25. Additionally,

at the time Plaintiffs purchased the policy, Real Legacy[2] "did not properly advise Plaintiffs in

determining the true replacement cost value of their property need to meet the co-insurance

---

[1] The factual background is taken from Plaintiffs' allegations as stated in their initial
Complaint; they do not reflect factual findings made by this Court.

[2] Because the Complaint alleged that Real Legacy was an agent and/or subsidiary of the AARP
Defendants, GCSM, CSMPR, and Overseas, all of the actions taken by Real Legacy in adjusting
the insurance claim were also allegedly imputed to those Defendants. *See e.g*., Dkt. No. 1-1.

*Ross v. AARP Services, Inc.*
1:19-cv-00057-MEM-EAH
Memorandum Opinion
Page 3

requirement of the policy" and did not explain "the effect of failure to insure the property in an amount of at least eighty percent (80%) of the true replacement cost value." *Id.* ¶¶ 21-22.

On September 19 and 20, 2017, Hurricane Maria caused catastrophic damage to Plaintiffs' property. *Id.* ¶¶ 53-54. Thus, on October 2, 2017, Plaintiffs notified Real Legacy of their loss. *Id.* ¶ 55. On October 23, 2017, Real Legacy hired Sedgwick Claims Management Services, Inc. ("Sedgwick") and Vericlaim, Inc. ("Vericlaim") to adjust Plaintiffs' loss. *Id.* ¶ 56. On that date, Vericlaim and Sedgwick advised Plaintiffs that they had assigned the adjustment to their agent, Alvaro del Santiago Barolome, who inspected the property on October 31, 2017. *Id.* ¶¶ 57-58. On November 13, 2017, Darin Ross texted Barolome to ask about the status of the adjustment, and Barolome responded that it would take about a week because the damage was significant. *Id.* ¶¶ 59-60. On December 11, 2017, Barolome advised Plaintiffs via text that his estimate was finished but that he needed receipts for the loss of use damages. *Id.* ¶ 61. Three days later, Barolome texted Plaintiffs the completed damages estimates: dwelling real cost value - $115,413.70; other structures real cost value - $34,340; personal property - $15,000; loss of use - $4,200; all of the damages were fraudulent except for personal property. *Id.* ¶¶ 62-63. After receiving the estimates, Darin Ross texted Barolome for more information regarding their loss of use claim; Barolome directed him to contact AARP for policy information. *Id.* ¶¶ 64-65. Darin Ross asked Barolome to send to the estimate to Real Legacy; Barolome responded via text, stating "but it will be faster if I sent directly the final report with a compromise settlement." *Id.* ¶¶ 66-67. On December 12, 2017,

Barolome sent Plaintiffs an email stating "I need you[r] agreement to send the estimate and make it faster." *Id.* ¶ 68. On January 3, 2018, Barolome emailed Plaintiffs providing a written statement of the loss adjusted to $129,688.66; three days later he asked Plaintiffs to "send [him] their agreement to submit to the company." *Id.* ¶¶ 69-70. On February 12, 2018 Barolome emailed Plaintiffs stating "In that case, please let me know what amount you are willing to accept. I will send the report with no conformity to AARP."; he also emailed again that day and asked if they would be willing to accept $177,773.70 before the deductible. *Id.* ¶¶ 71-72. On February 16, 2018, Plaintiffs emailed Barolome and informed him that they had hired a public adjuster. *Id.* ¶ 73. That same day, Plaintiffs hired a firm to adjust their claim, and, in June 2018, the firm completed its report and estimated Plaintiffs' damages at $538,667.71 for the dwelling loss, $77,647.25 for the structure loss, $15,000 for personal property, and $15,000 for loss of use; nineteen days later Phoenix forwarded this report to Real Legacy. *Id.* ¶¶ 75-76.

Thereafter, Sedgwick and Vericlaim assigned Byron Gilchrest to work as a second adjuster to adjust Plaintiffs' claim. *Id.* ¶ 77. Gilchrest did not complete his report until November 2018; the report acknowledged that the damage to the guest house was over the other structure limit of the policy. *Id.* ¶ 78. Gilchrest proposed the following settlement: $265,000 for the dwelling loss; $45,000 other structure limits; $15,000 for personal property; and $15,000 for loss of use, but only if said loss was incurred or there was a signed

contract. *Id.* ¶ 79. The report and settlement were fraudulent because they did not accurately state the amount of Plaintiffs' losses. *Id.* ¶ 80.

Because Real Legacy had suffered $110,000,000 in losses and was under-reinsured by $70,000,000, in September 2018, the Office of the Commissioner of Insurance of Puerto Rico placed Real Legacy under regulatory supervision through a Rehabilitation Order. *Id.* ¶¶ 90-91. At the time of the Rehabilitation Order, Plaintiffs' claim was one of eighty-two unpaid pending claims in the Territory, because Sedgwick, Vericlaim, and Gilchrest[3] had prepared a false adjustment of Plaintiffs' damages. *Id.* ¶¶ 94-95. By the time the Adjuster Defendants submitted the final report to Real Legacy, it was already in "rehabilitation." *Id.* ¶ 97. Despite multiple written demands for payments, the claim has never been paid. *Id.* ¶ 98. In January 2019, the Court of First Instance of San Juan ordered Real Legacy to liquidate its assets. *Id.* ¶¶ 99-100. Plaintiffs are still owed: $538,667.71 for dwelling loss; $77,647.25 for other structure loss; $15,000 for personal property; and $15,000 for loss of use. *Id.* ¶ 101.

## II.   Procedural History

Plaintiffs brought claims of breach of contract, breach of the duty of good faith and fair dealing, bad faith, breach of fiduciary duty, fraud in the inducement, unfair trade practices, misrepresentation, and negligence against the AARP Defendants, GCSM, CSMPR,

---

[3] Together, Vericlaim, Sedgwick, and their employee Gilchrest will be referred to as the "Adjuster Defendants."

*Ross v. AARP Services, Inc.*
1:19-cv-00057-MEM-EAH
Memorandum Opinion
Page 6

and Overseas. Plaintiffs brought a claim of tortious interference with contractual relations against the Adjuster Defendants.

The AARP Defendants removed the case to this Court in October 2019. Dkt. No. 1. In November 2019, all Defendants[4] filed motions to dismiss for failure to state a claim. Dkt. Nos. 22,[5] 25, 29, 39. In March 2021, Judge Malachy E. Mannion[6] ruled on the motions to dismiss and entered an order which: (1) granted the AARP Defendants' motion with respect to the unfair trade practice claim and denied it as to all other counts; (2) granted the Adjuster Defendants' motion; and (3) granted GCSM and CSMPR's motion as to the unfair trade practice claim and denied it as to all other counts. Dkt. Nos. 91, 92. After the ruling on the motions to dismiss, the remaining Defendants answered. Dkt. Nos. 93, 97. Thus, in June 2021, the Court entered a scheduling order including, inter alia, a fact discovery deadline of November 30, 2021. Dkt. No. 105.

In August 2021, Plaintiffs filed a motion for leave to amend their Complaint, Dkt. No. 114, which the Court granted, Dkt. No. 126.  The Amended Complaint eliminated two claims: the unfair trade practice claim against the AARP Defendants, GCSM, and CSMPR and the tortious interference claim against the Adjuster Defendants; it also asserted two new claims

---

[4] Overseas never filed a responsive pleading or otherwise participated in the case.
[5] The Adjuster Defendants' motion to dismiss at Dkt. No. 22 was refiled at Dkt. No. 25. Thus, the Court dismissed the original motion, Dkt. No. 22, as duplicative, and addressed the second motion, Dkt. No. 25, in substance in its memorandum opinion. Dkt. No. 90.
[6] The Honorable Malachy E. Mannion, District Judge for the Middle District of Pennsylvania, is sitting by designation on this case.

against the Adjuster Defendants: a breach of contract claim under a third-party beneficiary theory and a gross negligence claim. Dkt. No. 128. All underlying factual allegations regarding the policy, hurricane, and loss adjustment process and the other Counts remained identical. *Id.* The AARP Defendants answered. Dkt. No. 132. The Adjuster Defendants, GCSM, and CSMPR filed second motions to dismiss. Dkt. Nos. 137,[7] 152.[8]

In April and May 2022, while briefing on the motions to dismiss was pending, the parties engaged in discovery, serving Rule 26 disclosures, other discovery, subpoenas, interrogatories, and requests for production. Dkt. Nos. 157-161, 164, 170. Discovery continued from June to September 2022,[9] with parties serving requests, responses, and notices of depositions. Dkt. Nos. 177-181, 187-191, 193-195, 197-199. In September 2022, Judge Mannion ruled on the pending motions to dismiss, granting in part and denying in part GCSM and CSMPR's motion[10] and denying the Adjuster Defendants' motion. Dkt. No. 200, 201.

In October 2022, the AARP Defendants filed the pending motion for protective order, asking the Court to enter their proposed protective order under Rule 26(c) to prevent public

---

[7] The Adjuster Defendants' motion to dismiss at Dkt. No. 135 was an inadvertent filing.

[8] GCSM and CSMPR filed an initial motion to dismiss in a fashion that did not comply with the Court's local rules. Dkt. No. 148.

[9] In May 2022, Plaintiffs moved to extend discovery and case deadlines, Dkt. No. 166; the Court granted this motion. Dkt. No. 168. In August 2022, the parties jointly filed a motion to extend factual discovery and other deadlines, Dkt. No. 185, which the Court also granted, providing a new fact discovery deadline of November 15, 2022. Dkt. No. 186.

[10] Effectively, the Court ruled that Plaintiffs failed to properly serve CSMPR and granted its motion to dismiss, but found that all claims remained against GCSM. Dkt. No. 200.

dissemination of AARP's confidential licensing contacts. Dkt. No. 210. It explained that, in discovery, Plaintiffs requested "any and all documents relating to contracts between the AARP Defendants and any other Defendant and/or Real Legacy Assurance Company, Inc." Dkt. No. 211 at 3. The AARP Defendants further argued that, though the contracts between Real Legacy and AARP were responsive to this request, they contained proprietary, highly negotiated terms that governed the relationships between these parties; according to the AARP Defendants, disclosure of such information would allow competitors access to confidential information and harm the AARP Defendants in future contract negotiations. *Id*. The AARP Defendants argued that they had met their burden to show that a protective order was warranted because their contract terms were commercial information worthy of protection, and good cause existed to invoke the Court's protection. *Id*. at 4-5 (citing *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 889–90 (E.D. Pa. 1981)). Additionally, to support a finding of good cause, they submitted a Declaration from Todd Wilson, the Director of Insurance Relationships at AARP, averring that the contracts contained terms that AARP frequently uses in agreements with other licensees that are the result of competitive, sensitive negotiations and that revealing the terms would damage AARP's negotiating power. *Id*. at 7-8; Dkt. No. 211-1 (Decl. of Wilson).

The motion included a proposed protective order, which generally allowed the parties to designate certain information as confidential or highly confidential and governed the disclosure of and procedures for handling all confidential information. Dkt. No. 210-1.

*Ross v. AARP Services, Inc.*
1:19-cv-00057-MEM-EAH
Memorandum Opinion
Page 9

Specifically, it defined confidential information as distinct from highly confidential information, with confidential information including "any material which contains any trade secret or other confidential research, development, or commercial information" (internal quotation marks omitted). Highly confidential information was defined as:

> any Confidential Information that . . . is of a highly proprietary or technical nature constituting trade secrets or competitively sensitive information such as financial or pricing data that could potentially be used by (1) the requesting party, or (2) expert consultant or witness engaged or purposes of this matter, or (3) a non-party to the litigation, for commercial use or otherwise to harm competition or the competitive position of the producing party or any other party or entity.

Dkt. No. 210-1 ¶ 3. The protective order also included provisions regarding disclosure of both types of information. *Id*. ¶¶ 4, 7. Confidential information could be disclosed to: (1) counsel and assisting personnel; (2) the parties and certain of their employees; (3) qualified persons transcribing or recording testimony; (4) experts and their consultants and staff; (5) the Court and its officers; and (6) other persons by written agreement of the parties. *Id.* ¶ 4. In contrast, highly confidential information could be disclosed only to: (1) counsel and assisting personnel; (2) the Court and its officers; and (3) qualified persons transcribing or recording testimony. The proposed protective order also provided that all confidential information would be available, subject to the same restrictions, to the parties in the related Superior Court cases and that confidential information could be used on appeal, subject to

*Ross v. AARP Services, Inc.*
1:19-cv-00057-MEM-EAH
Memorandum Opinion
Page 10

the parties negotiating a new protective order governing that action. *Id.* ¶¶ 5-6.  Plaintiffs did

not file an opposition to the motion for protective order.[11]

The Court held a hearing on the motion on April 4, 2023. Dkt. No. 253. At the outset,

Plaintiffs stated that they did not oppose the entry of a protective order, but that they could

not agree to the terms of the proposed protective order as written. *Id.* Plaintiffs confirmed

that their concerns with the language were the same as those laid out in the email discussion

attached to the motion. *Id.* Specifically, Plaintiffs asked to: (1) include a labelling provision

wherein the parties would have to indicate the type of information to be designated

confidential; (2) have a specific, delineated provision permitting the use of confidential

information as evidence at hearings and trial and as part of an appendix on appeal; and (3)

include a provision that experts have access to highly confidential information. *Id.*

Regarding the labelling requirement, Plaintiffs argued that each document should be

specifically labelled as "trade secret" or "pricing list" so that the basis for confidentiality was

apparent on the face of each document. *Id.* The AARP Defendants responded that this specific

labelling was unnecessary given the distinction in the definitions of confidential and highly

---

[11] Though Plaintiffs did not file an opposition, in their motion, the AARP Defendants
recounted the failed negotiation over the protective order and attached emails from
Plaintiffs' counsel that detailed Plaintiffs' objections. Specifically, Plaintiffs were concerned
about: (1) the lack of substantive difference in identifying confidential information/highly
confidential information and the lack of a requirement to label the nature of the information;
(2) including a provision that made clear that all confidential information would be available
for use in the Superior Court cases, at hearings and trials, and appendices on appeal; and (3)
treating highly confidential information differently from confidential information and the
lack of expert access to highly confidential material. Dkt. Nos. 211-3, 211-5.

*Ross v. AARP Services, Inc.*
1:19-cv-00057-MEM-EAH
Memorandum Opinion
Page 11

confidential information. *Id*. Moreover, a labelling requirement could lead to discovery disputes if the parties disagreed on the designation. *Id*. After discussion with the parties, the Court agreed that the existing definition provision was sufficiently clear and informed them that any protective order entered by the Court would not contain a labelling requirement and resolved the issue. *Id*.

The parties discussed the provision regarding factfinder access, with the AARP Defendants pointing out that the proposed order contained a provision that "[n]othing in this Protective Order will be construed to affect the use of any document, material or information at any trial or hearing . . . ." *Id*.; *see also* Dkt. No. 210-1 ¶ 20. However, Plaintiffs remained concerned about the lack of a provision allowing confidential information to be part of an appellate case appendix. *Id*. The AARP Defendants agreed that the word appeal could be added to that paragraph, which resolved the issue. Dkt. No. 253.

Regarding expert access, Plaintiffs argued for inclusion of a provision that experts could access highly confidential information[12] if they agreed to abide by the terms of the protective order. *Id*. The AARP Defendants contended that this was inappropriate, as any experts would likely be insurance experts whose disclosure of the contract terms— inadvertent or otherwise—could be devastating to AARP's future negotiating power. *Id*. Further, they contended that the provision of the proposed protective order stating that

---

[12] At the hearing, the AARP Defendants explained that they would designate the AARP-Real Legacy contracts as highly confidential, so the discussion primarily centered around these contracts. Dkt. No. 253.

parties could challenge the designation of any confidential information by petitioning the Court to negate the designation after an informal meet and confer would be sufficient to afford expert access. *Id.* Plaintiffs noted, and the Court agreed, that this process was insufficient, given that Plaintiffs may agree with a "highly confidential" designation, but still want to provide the information to their experts if it was relevant to their case. *Id.* After a lengthy colloquy with the parties discussing multiple solutions, the Court suggested creating a mechanism that permitted counsels to first access highly confidential information and then, if they felt expert disclosure was necessary, to notify opposing counsels and involve the Court if necessary. *Id.* However, no provision was finalized at the hearing. *Id.*

The Court also discussed the confusion in collectively referring to both confidential and highly confidential information as "Confidential Information," and suggested that the parties rewrite the protective order using a different term. *Id.* Thus, after the hearing, the primary remaining issue was expert disclosure. To that end, the Court ordered the parties to meet and confer by April 11, 2023 and submit a joint proposed protective order by April 18, 2023. *Id.*

Instead, on April 18, 2023, Plaintiffs filed a "Notice of Inability to Reach Agreement Regarding the AARP Defendants' Request for a Protective Order." Dkt. No. 255. Plaintiffs stated that an "agreement as to some issues was achieve [sic] but that the parties could not reach agreement regarding the submission of Highly Confidential information and documents to consultants and experts." *Id.* Plaintiffs also attached the AARP Defendants'

*Ross v. AARP Services, Inc.*
1:19-cv-00057-MEM-EAH
Memorandum Opinion
Page 13

most recent proposed version of the protective order, Dkt. No. 255-1, and their most recent

proposed version, Dkt. No. 255-2. The AARP Defendants filed a cross-notice, which included

the original proposed protective order, the latest proposed protective order, a redlined

version of the original proposed protective order, and Plaintiffs' proposed protective order.

Dkt. Nos. 256, 256-1, 256-2, 256-3, 256-4. The cross-notice detailed the revised language and

the discussions during the meet and confer, specifically noting that the AARP Defendants'

revised proposed protected order set forth a mechanism by which parties could resolve

expert disclosures. Dkt. No. 256-2 ¶ 14. The AARP Defendants explained that Plaintiffs felt

that this mechanism was inappropriate because it required revealing the identity of their

consulting experts (and thus Plaintiffs' counsel's work product) prior to their review of said

highly confidential information.[13]

## APPLICABLE LEGAL STANDARD

Rule 26(c)(1) provides that the court, for "good cause," may "issue an order to

protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense." Fed. R. Civ. P. 26(c)(1). The order may, as relevant here, "require[] that a

trade secret or other confidential research, development, or commercial information not be

revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). As explained by

a district court in this Circuit:

---

[13] Plaintiffs did not include this information in their submission to the Court, but their
suggested language in their draft of the proposed protective order bore this concern out.

*Ross v. AARP Services, Inc.*
1:19-cv-00057-MEM-EAH
Memorandum Opinion
Page 14

> Analysis of protective orders under Rule 26(c)[] requires three lines of inquiry. First, is the matter sought to be protected a trade secret or other confidential research, development, or commercial information which should be protected? Second, would disclosure of such information cause a cognizable harm sufficient to warrant a protective order? Third, has the party seeking protection shown good cause for invoking the court's protection?

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 889–90 (E.D. Pa. 1981) (internal quotation marks omitted).

Once the Court determines that the entry of a protective order is appropriate, the scope of that protective order is inherently discretionary. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984) ("To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."); *Kuhns v. City of Allentown*, 264 F.R.D. 223, 228 (E.D. Pa. 2010) ("It is axiomatic that a trial court has broad discretion to fashion discovery orders."). Indeed, "the court, in its discretion is authorized by [Rule 26(c)] to fashion a set of limitations that allows as much relevant material to be discovered as possible, while preventing unnecessary intrusions into the legitimate interests—including privacy and other confidentiality interests—that might be harmed by the release of the material sought." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).

## ANALYSIS

As an initial matter, the parties agree that entry of a protective order is appropriate in this case and that the Real Legacy-AARP contracts are subject to protection.

*Ross v. AARP Services, Inc.*
1:19-cv-00057-MEM-EAH
Memorandum Opinion
Page 15

The parties having agreed that the information they are seeking to protect is subject to a protective order, the only unresolved issue is how and to whom that information may be disclosed. At the hearing, the parties had three primary disputes over the terms of the protective order, specifically, the inclusion of: (1) a labelling provision wherein the parties would have to indicate the type of information to be designated confidential; (2) a provision permitting the use of confidential information as evidence at hearings and trial and as part of an appendix on appeal; and (3) a provision governing when and how experts could access highly confidential information. At the hearing, with the Court's assistance, the parties resolved the first and second issues, and both proposed protective orders reflect the same. Thus, the only issue for this Court to address is the language in the protective order concerning the disclosure of highly confidential information to experts which remains in dispute between the parties.

As discussed at the hearing, Plaintiffs argued for inclusion of a provision that experts could access highly confidential information if they agreed to abide by the terms of the protective order. Dkt. No. 253. The AARP Defendants contended that this was inappropriate, as any experts would likely be insurance experts whose disclosure of the contract terms— inadvertent or otherwise—could be devastating to AARP's future negotiating power. *Id.* The Court suggested creating a mechanism that permitted counsels to first access highly confidential information and then, if they felt expert disclosure was necessary, to notify opposing counsels and involve the Court if necessary. *Id.* Plaintiffs do not discuss the basis

for their objections in their notice of inability to reach agreement. Dkt. No. 255. However, the cross-notice detailed the revised language and the discussions during the meet and confer, explaining that Plaintiffs felt that the AARP Defendants' suggested mechanism was inappropriate because it required revealing the identity of their consulting experts and potential trial experts (and thus Plaintiffs' counsel's work product) prior to their review of said highly confidential information.

Per the notices and attached proposed protective orders, the only two paragraphs that remain in dispute are those governing expert disclosure. Dkt. No. 255-2 ¶¶ 7, 14; Dkt. No. 256-2 ¶¶ 7, 14. Specifically, Plaintiffs' proposed protective order includes a provision that all highly confidential information be made available to "experts and consultants and their staff who are employed for the purposes of this litigation who have executed the form affixed . . . thereby agreeing to be bound by the terms of this Protective Order." Dkt. No. 255-2 ¶ 7. Accordingly, Plaintiffs' suggested provision regarding a disclosure mechanism reads as following:

> If a party to this Protective Order wishes to disclose information designated as "Highly Confidential" to consulting or testifying experts or consultants and their respective staff who are employed for the purposes of this litigation, that party and the designating party shall make a good-faith attempt to reach an agreement that will allow such disclosure. The party wishing to disclose information designated as "Highly Confidential" to an expert or consultant shall (i) inform the designating party that the information will be disclosed to an expert or consultant and *(ii) have the expert or consultant sign the form affixed hereto as Appendix 1, the original of which shall be kept by the party engaging the expert or consultant. [sic] the basis on which any such disclosure would be made [.][] Should the disclosing party object to the disclosure under this paragraph, all parties will be notified of that objection and the parties will meet and confer as required by*

*Ross v. AARP Services, Inc.*
1:19-cv-00057-MEM-EAH
Memorandum Opinion
Page 17

> *court rules to attempt to resolve the conflict.* Factors that may influence such efforts include whether the document containing information that the party wishes to disclose to an expert or consultant can be redacted so as to allow disclosure of information that is not Highly Confidential. Nothing in this paragraph 14 shall be construed to require a party to disclose Privileged Information (as defined in paragraph 20) to any other party *and specifically any information covered by the work product doctrine to any other party. Additionally nothing in this paragraph 14 shall be constructed [sic] to require a party to disclose any information inconsistent with Court Rules and the current Case Management Order.* If efforts to reach an agreement on such disclosure are not successful, either party may seek the Court's assistance. In no case may Highly Confidential information be shown to any party outside those identified in paragraph 7(a), 7(b), 7(c), or 7(d) absent either leave of the Court or the designating party's agreement.

Dkt. No. 255-2 ¶ 14 (emphasis added).[14]

In contrast, the AARP Defendants' proposed protective order does not contain the disclosure provision in paragraph 7, but does provide the following mechanism regarding expert disclosure:

> If a party to this Protective Order wishes to disclose information designated as "Highly Confidential" to consulting or testifying experts or consultants and their respective staff who are employed for the purposes of this litigation, that party and the designating party shall make a good-faith attempt to reach an agreement that will allow such disclosure. The party wishing to disclose information designated as "Highly Confidential" to an expert or consultant shall (i) inform the designating party of a desire to disclose the information, (ii) explain the basis on which any such disclosure would be made, including the basis on which any such disclosure would be necessary for the expert's or consultant's opinions in this action, and (iii) inform the designating party of the employment information of any such expert or consultant, or other information that would enable the designating party to assess whether disclosure of "Highly Confidential" information to such expert would enable its commercial use or otherwise to harm competition or the competitive

---

[14] The Court is citing to the version of the Plaintiffs' proposed protective order that they submitted in their notice, Dkt. No. 255-2, because the version of Plaintiffs' draft protective order submitted by the AARP Defendants at Dkt. No. 256-4 is not identical.

*Ross v. AARP Services, Inc.*
1:19-cv-00057-MEM-EAH
Memorandum Opinion
Page 18

> position of the producing party or any other party or entity. Factors that may influence such efforts include whether the document containing information that the party wishes to disclose to an expert or consultant can be redacted so as to allow disclosure of information that is not Highly Confidential. Nothing in this paragraph 14 shall be construed to require a party to disclose Privileged Information (as defined in paragraph 20) to any other party. If efforts to reach an agreement on such disclosure are not successful, either party may seek the Court's assistance. In no case may Highly Confidential information be shown to any party outside those identified in paragraph 7(a), 7(b), 7(c), or 7(d) absent either leave of the Court or the designating party's agreement.

Dkt. No. 256-2 ¶ 14.

As to the terms of the protective order, Plaintiffs' proposed provision for expert disclosure does not contemplate any mechanism for discussion among counsels prior to disclosure. Dkt. No. 255-2 ¶¶ 7, 14. It allows experts access to highly confidential information without advance notice, subject only to signing the appendix form, and would not allow the AARP Defendants to assess the harm of potential disclosure prior to its occurrence. *Id.* However, in contrast, the AARP Defendants' proposed provision goes a step too far in requiring Plaintiffs to "explain the basis on which any such disclosure would be made, including the basis on which any such disclosure would be necessary for the expert's or consultant's opinions in this action." Dkt. No. 256-2 ¶ 14. Plaintiffs contend that this disclosure mechanism proposed by the AARP Defendants runs afoul of the protections on work-product, and the Court agrees that this portion of the provision may require Plaintiffs' counsel to disclose her trial strategy and potentially communications with the experts, which are subject to protection. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (noting that work-product protection ensure the attorney's ability to "assemble information, sift what he

*Ross v. AARP Services, Inc.*
1:19-cv-00057-MEM-EAH
Memorandum Opinion
Page 19

considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his

strategy without undue and needless interference."); Fed. R. Civ. P. 26(b)(4)(C) (protecting

communications between a party's attorney and expert witness subject to specified

exceptions).

Thus, in balancing the competing interests of the parties, the Court finds that

paragraph 14, as written in the AARP Defendants' proposed protective order,  goes too far in

requiring Plaintiffs to explain the basis on which disclosure should be made, including

describing why the disclosure is necessary for the expert's or consultant's opinion, which

inherently involves discussion of said expert's opinion and its scope. This may require

Plaintiffs to disclose their trial strategy, which they have a strong interest in protecting. *See*

*Sporck v. Peil*, 759 F.2d 312, 316 (3d. Cir. 1985) ("Such material [including opinion work

product such as an attorney's legal strategy and intended lines of proof] [are] accorded an

almost absolute protection from discovery because any slight factual content that such items

may have is generally outweighed by the adversary system's interest in maintaining the

privacy of an attorney's thought processes and in ensuring that each side relies on its own

wit in preparing their respective cases."). Accordingly, the Court will modify paragraph 14,

and it  will read as follows:

> If a party to this Protective Order wishes to disclose information designated as
> "Highly Confidential" to consulting or testifying experts or consultants and their
> respective staff who are employed for the purposes of this litigation, that party and
> the designating party shall make a good-faith attempt to reach an agreement that
> will allow such disclosure. The party wishing to disclose information designated as
> "Highly Confidential" to an expert or consultant shall (i) inform the designating

party of a desire to disclose the information and (ii) inform the designating party of the employment information of any such expert or consultant, that would enable the designating party to assess whether disclosure of "Highly Confidential" information to such expert would enable its commercial use or otherwise harm competition or the competitive position of the producing party. Factors that may influence such efforts include whether the document containing information that the party wishes to disclose to an expert or consultant can be redacted so as to allow disclosure of information that is not Highly Confidential. Nothing in this paragraph 14 shall be construed to require a party to disclose Privileged Information (as defined in paragraph 20) to any other party. If efforts to reach an agreement on such disclosure are not successful, either party may seek the Court's assistance. In no case may Highly Confidential information be shown to any party outside those identified in paragraph 7(a), 7(b), 7(c), or 7(d) absent either leave of the Court or the designating party's agreement.

As modified, this provision ensures that the AARP Defendants receive advance notice when Plaintiffs wish to disclose highly confidential information to an expert. Further, requiring Plaintiffs to disclose the employment status and history of said expert will allow the AARP Defendants to ascertain the severity and scope of the risk in any disclosure. However, it also ensures that Plaintiffs are not forced to reveal their trial strategy or any work-product in the form of their counsels' communications with an expert. This provision more appropriately considers both parties' concerns over expert disclosure.

## CONCLUSION

In sum, the entry of a protective order is warranted, and the Court's modified protective order will best serve the interests of both parties.

*Ross v. AARP Services, Inc.*
1:19-cv-00057-MEM-EAH
Memorandum Opinion
Page 21

An appropriate Order accompanies this Memorandum Opinion.

ENTER:

Dated: May 5, 2023                         /s/ Emile A. Henderson III
                                           EMILE A. HENDERSON III
                                           U.S. MAGISTRATE JUDGE